IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Vilma Montano,                    )
                                  )
              Plaintiff,          )
                                  )
v.                                )
                                  )   CIVIL ACTION
INOVA Health Care Services,       )   No. 1:08cv565 (GBL)
                                  )
              Defendant.          )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant INOVA Health Care Services' Rule 12(b)(6) Motion to Dismiss Plaintiff Vilma Montano's Amended Complaint.  Ms. Montano alleges she was subjected to workplace sexual harassment and a hostile work environment stemming from her co-workers' treatment of her and Hispanic patients at INOVA.  Ms. Montano maintains that her co-workers uttered racially offensive statements in her presence about Latino patients and made offensive remarks about her after she underwent cosmetic surgery.  She also alleges that INOVA unduly suspended her and disclosed the details of her cosmetic surgery to her co-workers.

There are four issues before the Court.  The first issue is whether Ms. Montano's allegations that co-workers made offensive remarks about Hispanics in her presence are sufficiently severe and pervasive to constitute race or national origin

1

discrimination. The second issue is whether Ms. Montano's allegations that, after she returned to work from cosmetic surgery, co-workers spread rumors about her and that her supervisor stared at her state a claim for sexual harassment. The third issue is whether INOVA, in reprimanding and suspending Ms. Montano, took materially adverse action against her that was causally connected to protected activity under Title VII. The fourth issue is whether Ms. Montano's co-workers' apparent knowledge of her cosmetic surgery supports Ms. Montano's assertion that INOVA disclosed Ms. Montano's confidential medical information.

The Court grants the Defendant's Motion to Dismiss and holds that Ms. Montano has failed to state a claim for race or national origin discrimination under Title VII because her co-worker's comments were not sufficiently frequent, pervasive or more than merely offensive and did not alter the work environment. The Court grants the Defendant's Motion to Dismiss Ms. Montano's claim for gender discrimination under Title VII because she has not alleged that her co-workers made comments that were because of sex and the incident in which Ms. Montano's supervisor allegedly stared at her is too isolated to state a claim. The Court denies INOVA's Motion to Dismiss Ms. Montano' claim for unlawful retaliation because INOVA suspended Ms. Montano in close temporal proximity to receiving her

discrimination complaints.   The Court grants Defendant's Motion

to Dismiss Ms. Montano's Americans with Disabilities Act claim

for discrimination based on her allegations that INOVA disclosed

her confidential medical information because her allegations do

not rise above the speculative level.

## I. BACKGROUND

Ms. Vilma Montano, a Hispanic woman of Nicaraguan origin,

alleges that her INOVA Fairfax Hospital co-workers and

supervisors regularly made offensive and derogatory comments

about Hispanics in her presence.   Ms. Montano cites five

incidents of harassment based on race and national origin.

Three of these incidents involve co-workers stereotyping

Hispanic patients by assuming the Hispanic patients were illegal

aliens.[1]  Ms. Montano alleges her co-workers unreasonably

questioned Hispanic patients about their immigration status and

inferred that young Hispanic men were gang members. Ms. Montano

alleges that INOVA staff sought to deny Hispanic patients

workers' compensation benefits and unreasonably questioned these

patients about whether they possessed social security numbers. [2]

Ms. Montano also took offense to an incident where a co-worker

complained that "these [Latino] people keep crossing the river"

and an incident where a co-worker referred to several Hispanic

---

[1] (Am. Compl. ¶¶ 9, 10).

[2] *Id.*

3

men in the waiting room as "Mexicans" and members of the gang MS-13.[3]  Ms. Montano claims that she complained about these incidents to her management and that INOVA did not counsel her co-workers not to make such statements.[4]

Ms. Montano further asserts that her co-workers and supervisors sexually harassed her after she underwent cosmetic surgery.  Ms. Montano took a leave of absence to undergo cosmetic surgery.  She informed INOVA of the reasons for her leave upon Human Resources' request.  Ms. Montano alleges that, upon her return, her male supervisor came into work on his day off just so that he could stare at her.  She also alleges that a co-worker told her that her breasts looked nice, that co-workers informed her that others were spreading rumors about her breasts, and that another coworker told her that he heard she received a gift that her husband likes.  Ms. Montano maintains that she did not tell her co-workers about her cosmetic surgery and that her co-workers knowledge of her surgery demonstrates that INOVA disclosed the details of her confidential medical information within the office.

Ms. Montano claims that INOVA unlawfully retaliated against her, rather than acting upon her discrimination complaints.  Ms. Montano alleges that she made complaints to her supervisor and

---

[3] (Am. Compl. ¶¶ 11-12).
[4] (Am. Compl. ¶13).

4

human resources about her co-workers' behavior in November 2006, March 2007, April 2007, July 2007, and September 2007.[5]  She filed discrimination charges with the EEOC in October 2007 and March 2008.[6]  Ms. Montano alleges that her supervisor unduly suspended her in March 2007.[7]  She also claims that her supervisors made wrongful accusations against her, issued her unwarranted reprimands, and placed her on a performance improvement plan after she filed the EEOC charges.  Ms. Montano also supports her retaliation claim with allegations that co-workers were spreading rumors that management wanted to fire her and that she was a "snitch."[8]

## II. DISCUSSION

### A. Standard of Review

In a recent decision, the Supreme Court held that a Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *see* FED.R.CIV.P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts

---

[5]  (Am. Compl. ¶¶ 8-13).
[6]  (Am. Compl. ¶¶ 29-30).
[7]  (Am. Compl. ¶ 15).
[8]  (Am. Compl. ¶ 32).

5

asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when ruling on a Rule 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted. *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

**B. Analysis**

1. Hostile Work Environment Based on Race and National Origin

The Court grants INOVA's Motion to Dismiss Count 1, race discrimination, and Count 3, national origin discrimination because Ms. Montano does not allege sufficiently severe or pervasive conduct to state a hostile work environment claim.

In order to state a claim for hostile work environment, the plaintiff must allege that: "(1) she experienced unwelcome

6

harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E. I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). Courts evaluate the degree to which a work environment is hostile by looking to the totality of the circumstances. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22-23 (1993). The Court may inquire into "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The mere utterance of an epithet that offends an employee does not implicate Title VII. *Id.* at 21. The Supreme Court imposed this high standard to filter out "the ordinary tribulations of the workplace, such as the sporadic use of abusive language" so that Title VII does not become a "general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

Ms. Montano's allegations of harassment do not constitute a hostile work environment because the incidents that she cites are not severe. Courts have found the existence of a racially hostile workplace based on verbal harassment only in instances where unambiguous racial epithets, slurs, or extremely abusive

language were uttered with recurring frequency. *See e.g.*
*Spriggs v Diamond Auto Glass,* 242 F.3d 179, 185-186 (4th Cir.
2001) (holding that a workplace where a supervisor constantly
referred to African Americans as "monkeys" was a hostile work
environment); *see also White v. BFI Waste Svcs, LLC,* 375 F.3d
288 (4th Cir. 2004) (reasoning that a reasonable jury could find
harassment where supervisors referred to black employees by
several offensive nicknames and epithets for many months
repeatedly). Ms. Montano's INOVA co-workers comments about
Latinos were insulting when considered and reflect stereotyping,
however the words and comments about illegal immigration were
infrequent; five occasions are stated by Ms. Montano.[9] "Simple
teasing, offhand comments, and isolated incidents (unless
extremely serious) will not amount to discriminatory changes in
the terms and conditions of employment." *Faragher,* 524 U.S. at
788. In *White,* the court held that a work environment was
hostile because a supervisor's conduct would cause a person of
ordinary sensibilities to perceive an atmosphere of racial
hostility. *White,* 375 F.3d at 288. The incidents where INOVA
employees stated they assumed that Hispanic patients lacked
social security numbers do not rise to the level of the
discrimination examined in *Spriggs* or *White.* Even if the
comments that these employees made are offensive, they do not

[9] (Am. Compl. ¶¶ 8-12).

constitute unambiguous epithets or extremely abusive language.
Likewise, the incident where Ms. Montano's co-workers referred
to Hispanic patients as "Mexicans" and members of MS-13 and the
incident where a co-worker insinuated that Hispanics come to
America to receive government benefits do not show *unambiguous*
discrimination. These remarks are more properly categorized as
"offhand remarks" under *Faragher*.

Title VII does not except comments that are not made
directly to the plaintiff – the law here concerns a work
*environment*.  *Spriggs,* 242 F.3d at 184.  Courts do, however,
give weight to whether specific hostility is directed toward the
plaintiff or merely occurs in the plaintiff's presence.  *Id.*
Ms. Montano does not allege that any co-workers directed
racially offensive comments towards her.

Not only were these comments not severe, but they also were
not pervasive.  Pervasive discrimination occurs only where
incidents of harassment are continuous and concerted.  *Faragher*,
524 U.S. at 787.  Ms. Montano cites five comments over the
course of a year, each made by a different co-worker, not by
supervisors directed at her or patients.  These comments do not
constitute a continuous or concerted scheme of discrimination
because isolated incidents do not support a hostile work
environment claim unless they are severe.  Because none of these
comments were severe, Ms. Montano's allegations do not

demonstrate a pervasive pattern of discrimination.

The Court grants the Defendant's Motion to Dismiss Ms. Montano's race and national origin discrimination claims because her INOVA co-workers alleged statements were, at most, offensive offhand comments that do not demonstrate a concerted or recurring pattern of discrimination.

### 2. Hostile Work Environment Based on Gender

The Court grants INOVA's Motion to Dismiss Count 2, gender discrimination, because Ms. Montano does not allege sufficiently severe or pervasive discrimination based on gender. Courts apply the same analysis in gender-based hostile work environment claims as in race-based claims. *See Faragher,* 524 U.S. at 787. A work environment is hostile if it is rife with comments that "intimidate, ridicule, and maliciously demean the status of women." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000).

Ms. Montano contends that her co-workers' interest in her cosmetic surgery and her body exhibits sex discrimination because of her sex. Ms. Montano cites *Equal Employment Opportunity Commission v. R & R Ventures,* a case where the Fourth Circuit held that  an employee suffered a hostile work environment when a male manager displayed an inappropriate interest in and made continuous references to the size of female employees' breasts . 244 F.3d 334, 337 (4th Cir. 2001).  Ms.

Montano contends that *R & R Ventures* supports her gender
discrimination claim because her co-workers exhibit an
inappropriate interest in her breasts. However, the male
manager's interest in female employees in *R & R Ventures* was far
more severe and pervasive than what Ms. Montano claims to have
experienced here.   In *R & R Ventures*, a male manager made sexual
comments to young women, examined their bodies, inquired into
their sizes and sex lives, touched them inappropriately, and
made daily references to the size of their buttocks and breasts.
*Id.* at 338-40.   The court held that the male manager's
harassment was based on gender and the manager's actions sought
to intimidate, ridicule, or demean the status of women.   *Id.*   In
contrast, Ms. Montano cites an incident where a male co-worker
told her that he heard she received a gift that her husband
likes, an incident where her male supervisor stared at her
breasts[10], and an incident where three female co-workers told her
that they heard she "had gone out on leave and had come back
with 'big breasts'," her breasts were nice and that others were
spreading rumors about her 'fake' breasts[11].

Looking to the totality of the circumstances, Ms. Montano's
claims of harassment are not comparable to the facts in *R & R
Ventures*.   The R&R male manager's harassment was continuous and

---

[10]  (Am. Compl. ¶22).
[11]  (Am. Compl. ¶23).

concerted, physical, intrusive touching of young female employees, far more severe, and blatantly demeaning towards the status of women.  Ms. Montano does not allege a pervasive pattern of harassment.  She alleges that several co-workers made comments to her about her breasts.  She cites only three incidents of unwelcome comments, the majority of which were female employees making comments to Ms. Montano.  None of the males made any unwelcome sexual advances towards Ms. Montano. None of the co-workers' comments attacked the status of women like those that the supervisor made in *R&R Ventures*, where the supervisor asked a female employee about her sexual life and commented about her breasts and buttocks on an almost daily basis.  *Id.* at 340.  Ms. Montano does not allege a severe and pervasive pattern of discrimination based on gender.

Courts apply a higher standard for same-sex gender discrimination where there is no credible evidence that the harasser was homosexual than male-female harassment.  *Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 80-81 (1998); *English v. Pohanka of Chantilly, Inc.*, 190 F.Supp.2d 833, 841 (E.D. Va. 2002).  Ms. Montano would state a claim if she demonstrated that another woman harassed her in a sex-specific and derogatory way that was clearly motivated by hostility towards the presence of women in the workplace.  *Id.*  Ms. Montano has only alleged that female co-workers commented on her

12

breasts and told her that others were spreading rumors about her. She has not shown that INOVA espoused any hostility towards the presence of women in the workplace.

The one instance where a male employee engaged in unwelcome conduct toward Ms. Montano is when she alleges that her male supervisor came in to work on his day off, worked beside her, and stared at her breasts may constitute harassment. However, even if the Court construes this singular incident as gender discrimination, the event is too isolated to support Ms. Montano's hostile work environment claim. An isolated incident must be so serious that it completely alters the terms of employment to give rise to a hostile work environment claim. *Faragher*, 524 U.S. at 788. In *R & R* Ventures, none of the supervisor's conduct passed this threshold; The *R & R Ventures* court required the supervisor's conduct, which was more flagrant than Ms. Montano's supervisor's conduct, to be pervasive. *R & R* Ventures, 244 F.3d 334, 338-40. While the plaintiff in *R & R Ventures* suffered harassment daily, Ms. Montano has only pointed to three to five incidents of harassment over three months. The court grants INOVA's Motion to Dismiss Count 3, gender discrimination, because neither Ms. Montano's coworkers' comments, which do not sufficiently intimidate, ridicule, or demean the status of women, nor her supervisors stare, which was too isolated, show severe or pervasive discrimination.

13

### 3. Unlawful Retaliation

The Court denies INOVA's Motion to Dismiss Count 4, unlawful retaliation under Title VII, because Ms. Montano alleges that INOVA took materially adverse action against her and that the action was causally connected to a Title VII protected activity.  To state a claim for unlawful retaliation under Title VII, a plaintiff must show "that a reasonable jury could find (1) that [she] engaged in a protected activity; (2) that [her] employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). An action is materially adverse if it might "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Employees are protected from not all retaliation, but from retaliation that produces an injury or harm.  *Id. at 67.*  Title VII does not protect employees from "petty slights" or "minor annoyances" that are common in the workplace. *Id. at 68.*   The "materially adverse" requirement was established to combat actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.*

Ms. Montano engaged in a protected activity. Title VII protects opposition activities in the workplace, which encompasses grievances, protests, and speaking about an employer's discrimination. 42 U.S.C.A. § 2000e-3(a) (2008); *Kubicko v. Ogden Logistics Svcs.*, 181 F.3d 544, 551 (4th Cir. 1999) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Ms. Montano's grievances to management[12] are protected by Title VII, as are her EEOC charges. *See Burlington*, 548 U.S. at 68.

Ms. Montano supports her retaliation claim with allegations that her supervisor issued her unwarranted written warnings, suspended her based on false accusations, placed her on a performance enhancement plan, and gave her many undeserved "verbal counselings." Under *Burlington*, Title VII only protects against retaliation that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68. Clearly, INOVA's alleged suspension of Ms. Montano passes this test. *Prince-Garrison v. Md. Dep't of Health & Human Hygiene*, 526 F. Supp. 2d 550, 555 (E.D. Va. 2007). Ms. Montano's suspension fulfills the "materially adverse action" element of her prima facie case.

Ms. Montano properly alleges a causal connection between adverse action and a protected activity. Temporal evidence

---

[12] (Am. Compl. ¶¶ 8-13).

alone cannot establish causation unless the proximity is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Ms. Montano alleges that she reported racially offensive comments to her supervisor, Brian Shaffer, in March 2007 and that Shaffer suspended her on March 22, 2007[13]. *Breeden* holds that the threshold of "very close" is somewhere under three months, citing a Tenth Circuit case which considers one and a half months to be very close. *Id.* (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir 2001)). A supervisor's knowledge of a complaint satisfies the causation element required to make out a prima facie case for unlawful retaliation. *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998). Here, Shaffer knew of Ms. Montano's complaints to management because she brought these complaints directly to him.

The Court denies INOVA's Motion to Dismiss Count 4, unlawful retaliation in violation of Title VII, because her suspension constitutes materially adverse action and her complaint to her supervisor was in very close temporal proximity to that action.

### 4. Disclosure of Confidential Medical Information

The Court grants INOVA's Motion to Dismiss Count 4, disclosure of confidential medical information in violation of

---

[13] (Am. Compl. ¶ 15).

the ADA, because the ADA does not protect Ms. Montano's medical information.  The ADA requires employers not to disclose medical information obtained through an entrance exam or as a result of a disability-related inquiry, even if the employee is not disabled.  42 U.S.C.A. §12112(d)(3)(B); *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801 (E.D. Va. 2006).  The statute does not apply to information that employees voluntarily disclose. *Wiggins*, 451 F. Supp. 2d at 801.  "A disability-related inquiry is a question that is likely to elicit information about a disability." *Conroy v. N.Y. State Dept. of Corr. Svcs.*, 333 F.3d 88, 96 (2d Cir. 2003)(outlining EEOC's definition of disability-related inquiry).  A disability is a physical or mental impairment that substantially limits one or more an individual's major life activities.  *Sutton v. United Air Lines, Inc.* 527 U.S. 471, 497 (1999).

Courts hold that a plaintiff's disability status is irrelevant to whether confidential medical information is protected by the ADA.  *Cossette v. Minn. Power & Light*, 188 F.3d 964 (8th Cir. 1999); *see also Fredenburg v. Contra Costa County Dep't of Health Svcs.*, 172 F.3d 1176, 1181-82 (9th Cir. 1999); *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 593-94 (10th Cir. 1998); *Equal Employment Opportunity Comm'n v. Overnite Transp. Co.*, 2001 U.S. Dist. LEXIS 20535, *7, 2001 WL 1521584, *2 (W.D. Va. 2001).  However, to invoke the ADA, this confidential

medical information must be obtained through an entrance exam or a disability-related inquiry. *Wiggins*, 451 F. Supp. 2d at 801. Ms. Montano maintains that her information should remain confidential because INOVA inquired into the reasons for her leave.  This inquiry was not disability-related because the inquiry into Ms. Montano's leave was not likely to elicit information about a disability.  *Conroy*, 333 F.3d at 96 ("a 'disability-related inquiry' is a question which is likely to elicit information about a disability, such as asking employees about: whether they have or ever had a disability; the kinds of prescription medications they are taking; and, the results of any genetic tests they have had.")

Ms. Montano does not allege facts that show INOVA disclosed her medical information.  She merely alleges that she informed human resources of her surgery and that her co-workers made comments that indicated awareness that she had undergone a medical procedure.  Her accusation of wrongful disclosure is based wholly on speculation.  Ms. Montano's claim does not pass muster under *Conley v. Gibson* because her allegations are not supported by any factual basis. 355 U.S. 41, 47 (1957).

The Court grants INOVA's Motion to Dismiss Count 5, disclosure of confidential medical information, because INOVA did not obtain Ms. Montano's medical information through either an entrance examination or a disability-related inquiry and Ms.

18

Montano does not support her allegation that INOVA disclosed her medical information with any facts.

### III. CONCLUSION

The Court grants INOVA's Rule 12(b)(6) Motion to Dismiss Count 1 of Ms. Montano's Amended Complaint, discrimination based on race under Title VII, because Ms. Montano does not allege sufficiently severe or pervasive incidents of racial discrimination to support a hostile work environment theory. The Court grants INOVA's Rule 12(b)(6) Motion to Dismiss Count 2 of Ms. Montano's Amended Complaint, discrimination based on gender under Title VII,  because Ms. Montano does not cite a pervasive pattern of discrimination that is based on gender to support a claim for a hostile work environment.  Ms. Montano alleges incidents that may be construed as harassment, but they are too isolated and not sufficiently severe.  The Court grants INOVA's Rule 12(b)(6) Motion to Dismiss Count 3 of Ms. Montano's Amended Complaint, discrimination based on national origin under Title VII, because Ms. Montano does not allege sufficiently severe incidents of national origin discrimination.  The Court denies INOVA's Rule 12(b)(6) Motion to Dismiss Count 4 of Ms. Montano's Amended Complaint, unlawful retaliation under Title VII, because Ms. Montano alleges that INOVA took materially adverse action that was in very close temporal proximity to a protected activity. The Court grants INOVA's Rule 12(b)(6)

Motion to Dismiss Count 5 of Ms. Montano's Amended Complaint, disclosure of confidential medical information under the ADA, because Ms. Montano's allegations of disclosure of confidential medical information are too speculative and her medical information was not obtained through a disability-related inquiry.

For the foregoing reasons, it is hereby

ORDERED that Defendants Motion to Dismiss Count 1 of Plaintiff's Amended Complaint, discrimination based on race under Title VII, is GRANTED.  It is further

ORDERED that Defendants Motion to Dismiss Count 2 of Plaintiff's Amended Complaint, discrimination based on gender under Title VII, is GRANTED.  It is further

ORDERED that Defendants Motion to Dismiss Count 3 of Plaintiff's Amended Complaint, discrimination based on national origin under Title VII, is GRANTED.  It is further

ORDERED that Defendants Motion to Dismiss Count 4 of Plaintiff's Amended Complaint, retaliation in violation of Title VII, is DENIED.  It is further

ORDERED that Defendants Motion to Dismiss Count 5 of Plaintiff's Amended Complaint, discrimination under the ADA, is GRANTED.  The Clerk is directed to forward a copy of this Order to counsel.

ENTERED this _12th_ day of November, 2008

_____ /s/ _____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
11/12/08